IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action 14-cv-01997-MJW

GARY W. BORNMAN,

Applicant,

v.

D. BERKEBILE, *Warden*,

Respondent.

**ORDER DENYING PETITION FOR RELIEF PURSUANT TO 28 U.S.C. § 2241**
**(Docket No. 1)**

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Gary W. Bornman wrote a letter to the warden of the federal prison in which he is incarcerated. That letter was interpreted as communicating a threat, and Mr. Bornman was sanctioned accordingly. He asks this Court[1] to vacate that sanction under 28 U.S.C. § 2241. Because the letter and attendant circumstances support an inference of an implied threat, the Court finds that the prison's decision was supported by "some evidence." The Court therefore denies the petition.

## Facts

On September 11, 2013, another inmate at Mr. Bornman's prison attacked three members of the prison staff, sending all three to the hospital for treatment. The following week, Mr. Bornman sent a request letter (known as a "cop-out") to the prison's Warden, stating:

---

[1] The parties have consented to have this case resolved in its entirety by a magistrate judge, under 28 U.S.C. § 636(c). (Docket Nos. 16, 17.)

> Warden Berkebile:
>
> You don't make rounds, you don't answer cop-outs, you don't even respond to remedies if you don't feel like it.  And of course that filters down through your staff who not only do the same, but feel free to lie and otherwise do what they want.  Then you wonder why we end up acting out violently toward them like what just occurred.  Well, it's no wonder to me.  The wonder is that that kind of violence doesn't happen more often.  Personally, there's hardly a day that goes by where I don't think about harming you people, either in here or when I get out.  I mean I spend hours at a time fantasizing about all sorts of ways to torture, mutilate, and kill you all.  I'm talking day after day, month after month, year after year.  It even invades my dreams, all in vivid color.  And if you think it's just me, think again.  Pretty much every inmate, to one extent or another, has the same thoughts.  Hell, we discuss it amongst ourselves.  So the next time violence occurs toward staff you may need only look into a mirror to find its genesis.
>
> > Gary W. Bornman
> > #09219-014
> > F-604

(Docket No. 18-1, pp. 26–27.)  The prison interpreted this as a threat and initiated a disciplinary hearing.

Mr. Bornman has never denied writing the letter.  Rather, he denies that his intent was to threaten.  He provided the following written statement for his hearing:

> According to the American Heritage Dictionary a threat is defined as "an expression of an intention to inflict pain, injury, or evil."  Other dictionaries define it more simply as "an expression of intent to do harm."  By whatever wording all have as the essential element "an expression of intent," without which there is no threat.  Nowhere in my cop-out did I express an intent to do anything to anyone at any time.  To think, or fantasize, about something in no way expresses intent.  In other words, "I think about killing someone" is not a threat, while "I'm going to kill someone" would be.  What's more, the statements in the body of the report are taken out of context.  Taken as a whole no threat was expressed or intended.  Rather the statements were meant merely to further my point.  Therefore, as no threat was made, the report should be expunged.

(Docket No. 18-1, p. 20.)  Mr. Bornman tried to call Dr. Kristen Moody, a staff psychologist at the prison, as a witness for his hearing.  Dr. Moody was unavailable but submitted the following statement:

> [Mr. Bornman] has been writing similar statements as long as I have been here, and recently sent a number of similar letters about two months ago to the FBI, CIA, newspapers, etc.  The executive staff were aware of the letters, and my interpretation of them.  None of his writing directly threatens bodily harm to a specific individual, rather, he makes generalized threats to individuals in authority positions.  Him [and] I spoke about this as being read as threatening by the reader, even if he isn't being specific.  I believe he has an Axis II Disorder: Antisocial Personality Disorder with Narcissistic and Histrionic Traits.  This does not mean he is not competent, rather, he is causing drama in order to gain attention for himself.

(Docket No. 18-1, p. 28.)

Based on the foregoing evidence, the prison found an intent to threaten bodily harm, in violation of prison rules.  As punishment, Mr. Bornman lost 27 days of good-time credit and had his commissary and visitation privileges suspended for 30 days; he was further sentenced to 15 days of disciplinary segregation, a punishment that was suspended pending 60 days of clear conduct.  (Docket No. 18-1, pp. 5, 17.)

### Petition for Relief

Mr. Bornman challenges the loss of good-time credits, arguing that there is no evidence of any intent to threaten.  As he explains in his petition:

> As nothing in the cop-out meets the common, much less legal, definition of a threat (i.e. an expression of intent to do harm) the finding of guilt fails to satisfy the standard of there needing to be at least "some" evidence to support the charge.

(Docket No. 1, p. 3.)  He further notes that sanctioning implied (rather than express) threats runs the risk of abuse: "Otherwise literally anything could be construed as a

threat—a word, a look, a nod." (Docket No. 19, p.2.) Finally, he argues that his intent was not to communicate a threat but to explain to the warden that the warden's management leads to prison violence:

> Therefore, since the statements in question were clearly in furtherance of petitioner's point that the warden by his poor example was partly responsible for inmate violence toward staff and in no way were meant as a threat, the finding [of an intent to threaten] should be overturned and petitioner's lost good time restored.

(Docket No. 19, pp. 2–3.)

## Analysis

"It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted). A habeas petition under 28 U.S.C. § 2241, brought in the district where the inmate is confined, is a proper vehicle for challenging the loss of good-time credits. *See Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

As relevant here, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (internal citation and quotation marks omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent

assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Thus, a court upholds a prison disciplinary conviction "even if the evidence supporting the decision is 'meager.'" *Mitchell*, 80 F.3d at 1445 (quoting *Hill*, 472 U.S. at 457).

Here, there is evidence from which an intent to threaten can be inferred. Mr. Bornman wrote a letter to a specific person, referencing a recent attack on prison staff and detailing Mr. Bornman's own thoughts about attacking prison staff "either in here or when I get out." Although the letter makes no express threat, it can reasonably be inferred that Mr. Bornman intended the letter as an implied threat. To be sure, it can also be reasonably inferred that Mr. Bornman did *not* intend to make an implied threat; it might be, as he says, that his discussion of his own violent fantasies was offered merely as evidence of his larger point that the warden's management style breeds resentment. But the disciplinary officer is not required to draw all reasonable inferences in Mr. Bornman's favor. See *Walker v. Edgell*, 5 F.3d 548 (table), 1993 WL 371408 (10th Cir. 1993) ("[T]he 'some evidence' standard does not require proof with certainty, proof beyond a reasonable doubt or even proof by a preponderance of the evidence. All that is required is 'some evidence' exist to support the outcome of the disciplinary hearing."). The evidence here may support more than one inference—but so long as it supports the factual inference drawn by the prison, the requirements of due process have been met.

Mr. Bornman's argument to the contrary asserts that a threat isn't a threat unless it's explicit. But nothing in the law supports this position. *See, e.g.*, *Mabie v. Daniels*,

No. 13-CV-01489-REB, 2014 WL 321358, at *4 (D. Colo. Jan. 29, 2014) ("Applicant wrote a letter to a staff member, Mr. Huitron, stating '12–23–2014, we will find out if it was a good idea to threaten me,' (the date given is close to Applicant's release date), and then when interviewed by the investigating lieutenant stated 'What I do when I'm released is my business.'  Both of these statements provide some evidence that Applicant was threatening a staff member with bodily harm."); *Smith v. Cross*, 2:10CV35, 2010 WL 5525178, at *5 (N.D. W. Va. June 11, 2010) *report and recommendation adopted*, 2:10CV35, 2011 WL 39033 (N.D. W. Va. Jan. 5, 2011) ("[A]lthough the petitioner did not verbalize a threat to Wingo, his actions were an implied threat, and any reasonable person would have felt threatened by Wingo's description of his conduct.").  Implied threats are still threats, and a prison may sanction them.

## Order

For the foregoing reasons, the Petition for Relief Pursuant to 28 U.S.C. § 2241 (Docket No. 1) is DENIED and this case is DISMISSED with prejudice.

Dated: October 23, 2014  
      Denver, Colorado

*/s/ Michael J. Watanabe*  
Michael J. Watanabe  
United States Magistrate Judge